**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EDDY COPOT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 6987** |
| | ) | |
| **STEWART TITLE GUARANTY CO.** | ) | |
| **and SCOTT MCBEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Eddy Copot has sued his former employer, Stewart Title Guaranty Company, and its chief claims counsel and associate general counsel Scott McBee. Copot has alleged discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Illinois Human Rights Act (IHRA), and he asserts other claims under state law. The defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Copot's claims. For the reasons stated below, the Court grants the motion to dismiss in part and denies it in part.

## Background

At this stage, the Court accepts as true the facts alleged in the complaint. *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018). Stewart Title issues and underwrites title insurance policies. Copot is a lawyer. In April 2017, he started working at Stewart Title's office in Addison, Illinois as a claims counsel. In that role, he reviewed and issued decisions on title insurance claims. He reported to

Stewart Title's associate chief claims counsel Charity Makela, who in turn reported to McBee. In June 2018, Makela left the company, and Stewart Title promoted two female attorneys within the claims department. Kelly Rickenbach, who was based in a different office, took over Makela's responsibilities. Eleanor Sharpe became the managing counsel of Stewart Title's Addison office.

In the summer of 2018, Rickenbach informed Copot of a new company policy requiring employees in the claims department to obtain permission from management before attending continuing education classes. Stewart Title asked three other employees in the department (including, apparently, two men) about this policy, and none of them had heard of it. In August 2018, Copot requested Rickenbach's permission to attend a continuing education class. She did not reply, so the next day he contacted Sharpe, who gave him permission to attend the class.

On August 24, 2018, Copot sought permission from Rickenbach to take sick days from August 27 to August 29 while he underwent and recovered from surgery. Rickenbach sent him an e-mail stating that Stewart Title required employees to provide a "valid doctor's note indicating the illness and need to stay home" for sick leaves lasting more than two days. Compl. (dkt. no. 1) ¶ 113. She asked him to send her a doctor's note when he returned to work. Copot had never heard of that policy, and two female employees who had taken lengthy sick leaves told Copot that they also were unaware of it.

About a week later, Rickenbach sent an e-mail to Copot indicating that his request for sick leave had been denied. She again asked him to send her a doctor's note. A few days later, Copot sent her a "Statement of Services," which his doctor had

told him should suffice as a doctor's note. *Id.* ¶¶ 120, 122. But Rickenbach told Copot that Stewart Title needed a signed note by a doctor specifically stating that he had been treated on the dates for which he had taken leave. The complaint does not indicate whether Copot ever provided Rickenbach with such a note.

Copot has also made allegations regarding how Rickenbach instructed him to deal with requests from customers that Stewart Title reconsider its claim decisions. Previously, Makela and other claims counsel had told Copot that when a customer requested reconsideration, in certain circumstances he could deny those requests without obtaining the management's approval. But in September 2018, Rickenbach told Copot that he needed to get management's approval before denying any request for reconsideration. Two other employees in the claims department had not heard of that policy; those employees told Copot that they continued to deny certain requests of reconsideration without management's approval.

Copot also raises an issue concerning Stewart Title's work-from-home policy. In the autumn of 2018, Stewart Title permitted two female claims counsel to work from home at least once a week. Copot alleges that Stewart Title did not allow male claims counsel to work from home. He asked Rickenbach if he could work from home at least once a week, and she denied his request without giving a reason.

Things appeared to come to a head in October 2018, when Copot met with Tonya Moseley, who worked as his legal assistant and as Rickenbach and Sharpe's administrative assistant. Moseley told Copot that McBee, Rickenbach, and Sharpe had agreed to closely scrutinize his attendance, productivity, and work performance in retaliation for his refusal to provide documentation for his sick leave. Moseley said they

had instructed a colleague to document the times of Copot's arrival and departure from work and the length of any breaks he took.

On October 1, 2018, Copot sent an e-mail to a member of Stewart Title's human resources (HR) department asking to talk with her. They were unable to speak right away, but they chatted on October 16, 2018, and later that day Copot followed up by sending an e-mail in which he summarized the conversation. In the e-mail Copot alleged that Stewart Title engaged in sex discrimination and had an unlawful sick leave policy, and he asked Stewart Title to approve the sick leave he had taken for his surgery.[1] Copot called the same HR worker again on October 23, 2018 and left a voicemail asking for a response to his e-mail and stating he needed to request a week-long absence in November to care for his father. Copot stated in the voicemail that if Stewart Title did not approve that request and his earlier sick leave, he would file complaints with the Illinois Department of Labor regarding Stewart Title's sick leave policy and with the Equal Employment Opportunity Commission for gender discrimination.

On October 30, 2018, McBee and a senior HR director at Stewart Title approached Copot's office, accompanied by two armed security guards. Copot has alleged that "[o]ne security guard stood at the entrance and exit to the office suite while the other entered [Copot's] office [and] stood in the path of [his] office door closing and blocking it." *Id.* ¶ 150. They "prevented" Copot's "movement within the office suite" and stopped him "from accessing the restroom." *Id.* McBee told Copot that Stewart

---

[1] The Court may consider the contents of Copot's e-mail because he attached it to and referenced it in his complaint, and the e-mail is central to his some of his claims. *See Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019).

4

Title had decided to terminate his employment "due to poor job performance for not following claims handling procedures." *Id.* ¶ 151. McBee left the office and closed the door. The HR director told Copot to clear out his belongings, and the security guards escorted him out of the building.

In November 2018, Copot filed a claim for unemployment benefits with the Illinois Department of Employment Security (IDES) and a complaint alleging violations of the Illinois Employee Sick Leave Act with the Illinois Department of Labor. A couple of weeks later, IDES informed Copot that Stewart Title had contested his eligibility for unemployment benefits.

On February 8, 2019, Copot cross-filed a charge with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR). He checked the boxes for retaliation and discrimination based on sex. In the space to describe his complaint he stated:

> During my employment [with Stewart Title], I was subjected to different terms and conditions of employment than female employees, including, but not limited to, increased scrutiny and application of [Stewart Title's] sick leave policy. I complained and was subsequently discharged. I believe I have been discriminated against because of my sex, male, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Defs.' Mem., Ex. A (dkt. no. 17-1) at 2.[2]

On August 27, 2019, the EEOC dismissed Copot's charge and gave him notice of his right to sue. Copot timely filed this lawsuit on October 23, 2019. At the time, IDHR had not issued a finding on his charge filed with that agency.

---

[2] The Court may consider the charge because Copot referenced it in his complaint and it is central to his claim. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018).

In his complaint, Copot asserts three violations of Title VII. Specifically, he alleges disparate treatment on account of sex (count 1), disparate impact based on sex (count 2), and retaliation (count 3). He also has alleged violations of the IHRA: sex discrimination (count 4), disparate treatment (count 5), disparate impact (count 6), and retaliation (count 7). And he has alleged several claims under Illinois common law: civil conspiracy (count 8), false imprisonment (count 9), defamation (count 10), and respondeat superior (count 11). The defendants have moved the dismiss all of Copot's claims under Federal Rule of Civil Procedure 12(b)(6).

## Discussion

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering such a motion, a court "accept[s] well-pleaded facts as true and draw[s] all reasonable inferences in the [plaintiff's] favor." *Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1060–61 (7th Cir. 2020). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These pleading standards typically "are considerably relaxed" for *pro se* plaintiffs, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013), but "*pro se* litigants who are attorneys are not entitled to the flexible treatment granted other *pro se* litigants." *Cole v. Comm'r*, 637 F.3d 767, 773 (7th Cir. 2011).

As an initial matter, the defendants argue that Copot's Title VII and IHRA claims against McBee must be dismissed. Copot says in his response to defendants' motion

that he asserts only a defamation claim against McBee, but that is not clear from the face of the complaint. Accordingly, to the extent Copot has brought other claims against McBee, the Court dismisses all of those claims except the defamation claim, which the Court discusses later in this opinion.

**A.    Title VII claims (counts 1, 2, and 3)**

**1.    Exhaustion of remedies**

The defendants seek dismissal of part of Copot's sex discrimination claim, all of his disparate impact claim, and all of his retaliation claim because, they contend, he failed to exhaust administrative remedies before filing suit. A plaintiff typically may assert claims under Title VII only if he first presented the claims in a charge filed with the EEOC. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

The defendants argue that Copot's EEOC charge was insufficient to exhaust his sex discrimination claim in its entirety because, they contend, the charge related only to Stewart Title's sick leave policy, not its work-from-home arrangements, requirements for employees participating in continuing education classes, internal promotion process, or the process for the reconsideration of title claim denials. But "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 926 (7th Cir. 2018), *as amended on denial of reh'g and reh'g en banc* (June 19, 2018) (describing the exhaustion requirements under Title VII in order to interpret similar requirements under another federal statute). Although Copot specifically referenced only Stewart Title's sick leave policy in his charge, he alleged generally that he experienced sex discrimination because he was "subjected to different terms and

conditions of employment than female employees." Defs.' Mem., Ex. A (dkt. no. 17-1) at 2. This general allegation fairly encompasses the specific allegations to which the defendants object, all of which relate to the terms and conditions of Copot's employment. *Cf. Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 530 (7th Cir. 2003) (plaintiff's allegations of discrimination were not reasonably related to her charge where the charge referenced three specific instances of discriminatory conduct and contained no general allegations). Accordingly, the Court concludes that Santiago exhausted administrative remedies with respect to his sex discrimination claim.

The defendants next contend that Copot's disparate impact claim must be dismissed because his EEOC charge did not contain any allegations suggesting that Stewart Title had a policy or practice that disproportionately impacted male employees. In his disparate impact claim, Copot has alleged that Stewart Title's sick leave and promotions policies had a disparate impact on men. But Copot did not allege in his charge that Stewart Title had policies or practices caused the company to generally treat men differently from women; rather his charged focused on differential treatment of himself as an individual. *See Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 526 (7th Cir. 2008) (plaintiffs did not exhaust their remedies on a disparate treatment claim under the Age Discrimination in Employment Act where their EEOC charge stated that the plaintiffs were "subjected to different terms and conditions of employment"); *cf. Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1006 (charge and complaint both contained allegations that an employer's "basic skills test caused a disparate impact on Hispanic and Latino applicants"). Therefore, Copot has not exhausted administrative remedies with respect to his disparate impact claim.

Next the Court considers Copot's Title VII retaliation claim. In his complaint, Copot alleges that Stewart Title retaliated against him by terminating his employment and by contesting his claim for unemployment benefits. Stewart Title contends that Copot did not exhaust the claim to the extent it concerns the latter allegation. Copot's EEOC charge, however, stated only (with regard to retaliation) that he was discharged after he complained about discrimination. A claim that is not asserted in an administrative charge is considered exhausted only if it is "like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Chaidez*, 937 F.3d at 1004–05 (7th Cir. 2019) (quoting *Gelson v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). This requires the charge and complaint to "describe the *same conduct* and implicate the *same individuals*." *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)). That is not the case here; even if the decision to dispute Copot's unemployment claim involved the same people who terminated him, it involved different conduct.

In sum, Copot has exhausted his administrative remedies with respect to the sex discrimination claim and his retaliation claim insofar as it involves his termination, but not with respect to the disparate impact claim or the retaliation claim insofar as it involves Stewart Title's opposite to his claim for unemployment benefits. The latter claims are dismissed without prejudice. *See Teal v. Potter*, 559 F.3d 687, 693 (7th Cir. 2009) (dismissal for failure to exhaust administrative remedies is without prejudice).

## 2. Sufficiency of factual allegations

The defendants argue that Copot has failed to state a claim for sex discrimination pertaining to Stewart Title's sick leave requirements. Copot argues—correctly, of

course—that the pleading standards in Title VII cases are less demanding than the evidentiary burden a plaintiff later must satisfy. *See Luevano*, 722 F.3d at 1028. "[T]o prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his or] her sex." *Id.* The parties dispute whether Copot has alleged that Stewart Title instituted an actionable adverse employment action against him relating to its sick leave policy.

"In a discrimination case, a materially adverse employment action is one which visits upon a plaintiff a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (internal quotation marks omitted). "Such changes can involve the employee's current wealth, his career prospects, or changes to work conditions that include humiliating, degrading, unsafe, unhealthy, or otherwise significant negative alteration in the workplace." *Id.*

In his allegations relating to Stewart Title's sick leave policy, Copot alleges that Stewart Title discriminated against him "by requiring him to submit extensive documentation for his sick leave." Compl. (dkt. no. 1) ¶ 176. But "requiring an employee to substantiate his time off" does not "constitute an adverse employment action." *Boss*, 816 F.3d at 918. Copot argues, however, that he alleged that Stewart Title "denied his fringe benefit of paid sick leave," which he contends amounts to an adverse employment action. Pl.'s Resp. Br. (dkt. no. 18) at 10. Regardless of whether such a denial would constitute an adverse employment action (an issue the Court need not decide), that is not what Copot has alleged in the current version of his complaint. *See* Compl. (dkt. no. 1) ¶¶ 173–81.

Because the defendants do not address the factual allegations underlying Copot's sex discrimination claim, the Court need not address the adequacy of those allegations. Therefore, the Court dismisses Copot's Title VII sex discrimination claim only as it pertains to Stewart Title's sick leave policy, with leave to amend; the Court declines to dismiss the other allegations underlying that claim.

**B.      IHRA claims (counts 4, 5, 6, and 7)**

The Court turns next to Copot's IHRA claims. These claims also require exhaustion of available administrative remedies. *See* 775 Ill. Comp. Stat. Ann. 5/8-111(D); *see also Garcia v. Village of Mount Prospect*, 360 F.3d 630, 639 (7th Cir. 2004). A person seeking to pursue a claim under the IHRA first must file a charge with the IDHR, *Nickerson v. US Airways, Inc.*, No. 15 C 2970, 2016 WL 3563807, at *5 (N.D. Ill. July 1, 2016), which Copot did on February 8, 2019. The complainant may commence a civil action in court only after the IDHR either issues a final report or fails to issue a report within 365 days after the date on which the charge was filed. 775 Ill. Comp. Stat. Ann. 5/7A-102(D)(3–4), (G)(2); *see also Nickerson*, 2016 WL 3563807, at *5 (describing IHRA's exhaustion requirements); *Rabe v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 819 (N.D. Ill. 2013) (same). "A plaintiff's failure to comply with these exhaustion requirements warrants dismissal of the IHRA claims." *Nickerson*, 2016 WL 3563807, at *5 (dismissing IHRA claims without prejudice where the IDHR had not yet issued a final report and 365 days had not passed since the plaintiff filed her charge with the IDHR).

It is undisputed that Copot has not yet received a final order from the IDHR when he commenced this action on October 23, 2019. He filed this suit on October 25, 2019, less than 365 days after he filed his charge with the IDHR. Therefore, because Copot

had not yet fully exhausted administrative remedies at the time he filed suit, the Court dismisses his IHRA claims without prejudice. *See Teal*, 559 F.3d at 693. Accordingly, the Court need not address the parties' other arguments regarding Copot's IHRA claims.

## C.    Civil conspiracy claim (count 8)

Next is Copot's civil conspiracy claim. In Illinois, "[c]ivil conspiracy is defined as a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133, 720 N.E.2d 242, 258 (1999) (internal quotation marks omitted). To state a claim for civil conspiracy, a plaintiff must allege "an agreement and a tortious act committed in furtherance of that agreement." *Id.* As an intentional tort, civil conspiracy "requires proof that a defendant knowingly and voluntarily participate[ed] in a common scheme to commit an unlawful act or a lawful act in an unlawful manner." *Id.* (internal quotation marks omitted).

In his conspiracy claim, Copot alleges that McBee and Rickenbach agreed to scrutinize his attendance, productivity, and work performance in retaliation for his refusal to provide documentation for his sick leave. Compl. (dkt. no. 1) ¶¶ 229-31. And he alleges that McBee terminated him in retaliation for making allegations to HR regarding sex discrimination and violations of the Illinois Employee Sick Leave Act. *Id.* ¶¶ 233-34. Although the allegations suggest that he might be asserting the claim against McBee (he has not sued Rickenbach), Copot says in his response brief that is asserting the claim only against Stewart Title, not McBee. Pl.'s Resp. Br. (dkt. no. 18) at 15. It therefore appears that he is asserting that Stewart Title is vicariously liable for the

conspiratorial conduct of several of its agents, as Illinois law holds that it is not legally possible to have a conspiracy between an agent (McBee) and the agent's principal (Stewart Title). *See Buckner v. Atl. Plant Maint., Inc.*, 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (1998).

Stewart Title's primary argument in support of dismissal is that legally speaking there cannot be an actionable conspiracy involving only agents of the same principal. The Court is skeptical. There is very little Illinois law on this specific point; most of the cases are federal district court decisions, which are not binding regarding Illinois law and many of which, in the Court's view, do not engage in a close reading of state court cases. The only state court case cited by Stewart Title in its opening brief is *Salaymeh v. Interqual, Inc.*, 155 Ill. App. 3d 1040, 508 N.E.2d 1155 (1987). The conspiracy allegations in that case were a bit of a mess: the plaintiff alleged a conspiracy among all of the defendants, which included a corporation and two of its officials; a law firm and one of its members; and a hospital corporation, its owner, its chief executive officer, and the chairman of its board. *Id.* at 1041–42, 508 N.E.2d at 1157. The appellate court upheld the dismissal of the conspiracy claim. It read the claim as one that all of the defendants "committed the acts complained of as agents of the hospital corporation." *Id.* at 1044, 508 N.E.2d at 1158. It affirmed the dismissal of the claims *not* based on the proposition that a conspiracy involving only agents of a single principal is not actionable, but rather based on the proposition that "a conspiracy does not exist between a principal and an agent or servant." *Id.* In its reply brief, Stewart Title cited *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 49, 692 N.E.2d 1327, 1332 (1998), for the proposition that Illinois law does not permit a claim of conspiracy involving co-agents of

a single principal, but the court in *Bilut* simply cited on *Salaymeh* without providing analysis.  Another Illinois case often cited for this proposition, *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 173, 683 N.E.2d 985, 991 (1997), simply cites, without analysis, *Salaymeh* and one other case, *Bonanno v. LaSalle & Bureau Cty. R.R. Co.*, 87 Ill. App. 3d 988, 409 N.E.2d 481 (1980).  *Bonanno*, like *Salaymeh*, holds only that "a civil conspiracy cannot exist *between a corporation and its agents or employees* since the acts of an agent are considered to be the acts of a principal."  *Id.* at 995, 409 N.E.2d at 486 (emphasis added).  In short, Stewart Title has failed to cite any solid *Illinois* authority supporting its contention that an intracorporate conspiracy is not actionable under Illinois law.

Stewart Title's second argument is that the claim is preempted by the Illinois Human Rights Act.  The IHRA provides an administrative procedure for certain types of civil rights claims and specifies that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."  775 Ill. Comp. Stat. 5/8-111(D).  A common law tort claim is preempted by the IHRA if it is "inextricably linked to a civil rights violation such that there is no *independent* basis for the action apart from the [IHRA] itself."  *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017) (quoting *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517, 687 N.E.2d 21, 23 (1997)); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 934 (7th Cir. 2017).  The key question is "whether the plaintiff can prove the elements of the tort '*independent* of any legal duties created by the Illinois Human Rights Act.'"  *Richards*, 869 F.3d at 564 (quoting *Maksimovic*, 177 Ill. 2d 511, 687 N.E.2d at 24).

Copot says that he can prove the elements of a tort without reference to duties

created by the IHRA—specifically, conspiracy.  But conspiracy is not an independent

tort under Illinois law; it requires an underlying independent cause of action.  *See Horist*

*v. Sudler and Co.*, 941 F.3d 274, 281 (7th Cir. 2019).  Here the underlying tortious

conduct involves retaliation for claiming sick leave and for complaining internally about

sex discrimination.  The latter, however, is actionable only by virtue of the IHRA, which

bars retaliation against an employee who "has opposed . . . unlawful discrimination" or

who has "made a charge [or] filed a complaint" under the IHRA.  *See* 775 Ill. Comp.

Stat. Ann. 5/6-101.  Copot does not identify any other basis in Illinois common law to

sue for retaliation for making an internal complaint about sex discrimination.  Thus to the

extent Copot's conspiracy claim is premised upon retaliation for his internal claim

against sex discrimination, it is preempted by the IHRA.

But this is not the only basis for Copot's retaliation claim; he also says that he

was retaliated against for complaining about Stewart Title's allegedly improper

administration of its sick leave policy, which he contends ran afoul of the Illinois

Employee Sick Leave Act.  The IHRA does not preempt this aspect of Copot's

retaliation claim.

Because Stewart Title does not offer any other basis for dismissing the

conspiracy claim, the claim survives, to the extent it is based on a conspiracy to retaliate

against Copot for complaining about Stewart Title's allegedly improper (but not gender-

based) administration of its sick leave policy.

## D.     False imprisonment claim (count 9)

The defendants move to dismiss Copot's false imprisonment claim on the ground

that it is preempted by the Illinois Workers' Compensation Act (IWCA) or, alternatively,

on the ground that he has failed to plead a claim for false imprisonment. The Court address each argument in turn.

### 1. IWCA preemption

The IWCA provides an administrative remedy for injuries employees incur "arising out of in the course of [their] employment." 820 Ill. Comp. Stat. 305/11. Where it applies, the IWCA provides an exclusive remedy; it "imposes liability without fault upon the employer and, in return, prohibits common law suits by employees against the employer." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 462, 564 N.E.2d 1222, 1225 (1990); *see also* 820 Ill. Comp. Stat. 305/5(a), 305/11 (exclusivity provisions).

The defendants have asserted the IWCA's exclusivity provisions as an affirmative defense. *See Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1039 (7th Cir.), *cert. denied*, 139 S. Ct. 175 (2018) ("If an employer is sued in common law, the employer may raise the IWCA's exclusivity provisions as an affirmative defense."). "If [the employer] establishes the elements of the affirmative defense, then the burden shifts to the plaintiff to show that his claims are not subject to the IWCA or its exclusivity provisions." *Id.* A plaintiff need not anticipate or plead around affirmative defenses in his complaint. *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004). But "when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law, dismissal is appropriate." *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

To show that his claim is not preempted by the IWCA, Copot "must demonstrate that his injury '(1) was not accidental, (2) did not arise from his . . . employment, (3) was not received during the course of employment, or (4) was noncompensable under the

[IWCA].'" *Baylay*, 881 F.3d at 1039 (7th Cir.) (alterations in original) (quoting *Collier v. Wagner Castings Co.*, 81 Ill.2d 229, 237, 408 N.E.2d 198, 202 (1980)). The parties dispute whether, from the face of the complaint, it is clear that Copot's injury was accidental. Under the IWCA, injuries resulting from a coworker's intentional tort are accidental if they are "unexpected and unforeseeable from both the injured employee's and the employer's points of view." *Id.* Such injuries, however, are *not* accidental the employer or its alter ego intentionally inflicted the injuries or "commanded or expressly authorized" them. *Meerbrey*, 139 Ill. 2d at 464, 564 N.E.2d at 1226 (1990).

Though Copot's complaint does not directly address the alter ego point, federal pleading rules do not require him to plead this claim with particularity. His complaint may be fairly read to allege that a member of Stewart Title management acting as Stewart Title's alter ego expressly commanded or authorized McBee or the security guard to falsely imprison him. For this reason, the Court declines to dismiss Copot's false imprisonment claim based on the IWCA's exclusivity provisions.

### 2.     Sufficiency of factual allegations

The defendants also argue that Copot has not adequately alleged false imprisonment. "False imprisonment is an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Meerbrey*, 139 Ill. 2d at 474, 564 N.E.2d at 1231. The defendants contend that the security guard did not restrain Copot's liberty but, rather, merely prevented him from accessing parts of the office, including the restrooms, and then the HR director ordered him to leave the building. This argument overlooks a key allegation in Copot's complaint: that one of the guards prevented him from leaving his office. Specifically, Copot alleges that a security

guard "stood at the entrance and exit to the office suite" and that the other guard "stood in the path of Copot's office door," closed the door, and blocked it, "which prevented [Copot's] movement within the office suite and from accessing the restroom facilities." Compl. (dkt. no. 1) ¶ 257. An imprisonment can occur when a person is "prevent[ed] from leaving the room in which he is." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) (citation omitted); *see also Karney v. City of Naperville*, No. 15 C 4608, 2015 WL 6407759, at *2 n.3 (N.D. Ill. Oct. 22, 2015) (indicating without deciding that an allegation that defendants "blocked" a plaintiff in a parking lot might support a claim for false imprisonment); *Perkins v. Village of Lincolnshire*, No. 94 C 7745, 1996 WL 613159, at *8 (N.D. Ill. Oct. 22, 1996) (plaintiff stated a claim for false imprisonment where he alleged that a police officer blocked him from exiting a bank, "causing him to remain where he did not wish to stay"); *cf. Campbell v. AT&T Commc'ns, Inc.*, No. 91 C 8296, 1994 WL 380620, at *8 (N.D. Ill. July 18, 1994) (granting summary judgment in favor of a defendant on a false imprisonment where there was no evidence that its employees "blocked" an exit or physically or forcibly restrained the plaintiff).

Viewing the facts in the light most favorable to Copot, it is plausible that he tried to leave the office and was prevented from doing so. For this reason, defendants are not entitled to dismissal of his false imprisonment claim.

**E.    Defamation claim (count 10)**

McBee, the only defendant named in Copot's defamation *per se* claim, has moved to dismiss the claim. "To state a defamation claim [under Illinois law], a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third

party, and that this publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478,

491, 917 N.E.2d 450, 459 (2009). A statement is defamatory *per se* if its harm to a

person's reputation "is obvious and apparent on its face." *Id.* "In Illinois, there are five

categories of statements that are considered defamatory *per se*." *Id.* Copot's claim

invokes two of those categories: statements "that impute a person is unable to perform

or lacks integrity in performing her or his employment duties" and statements "that

impute a person lacks ability or otherwise prejudices that person in her or his

profession." *Id.* at 492, 917 N.E.2d at 459.

"[E]ven if an alleged statement falls into one of the categories of words that are

defamatory *per se*," it is not necessarily actionable. *Id.* at 499, 917 N.E.2d at 463. A

court must consider the statement's natural and obvious meaning, context, and

implications. *Id.* If the statement is reasonably capable of an innocent interpretation, it

cannot be actionable *per se*. *Id.*; *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (to be

actionable *per se* under Illinois law, a "statement's only reasonable readings must . . .

be defamatory in nature"). Whether a statement is reasonably capable of an innocent

interpretation is a question of law. *Id.*

Copot has alleged that McBee defamed him by telling him, in the presence of a

security guard, that Stewart Title had terminated his employment "due to poor job

performance for not following claims handling procedures." Compl. (dkt. no. 1) ¶¶ 258–

59. Copot contends that there is no reasonable construction of the statement "other

than to mean that [Copot] is a liar and unfit to practice law." Pl.'s Resp. Br. (dkt. no. 18)

at 20–21.

Courts applying Illinois law, however, "have been reluctant to find statements by

an employer to third parties regarding an employee's past performance in a specific position to be defamatory *per se*." *Van Pelt v. Bona-Dent, Inc.*, No. 17 C 1128, 2018 WL 2238788, at *9 (N.D. Ill. May 16, 2018). Rather, courts have deemed such statements to be reasonably capable of an innocent interpretation concerning "an employee's past performance in a specific position," as opposed to his general ability to perform employment duties. *Id.* at *9–10 (collecting cases); *see also Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 413–15, 667 N.E.2d 1296, 1302–03 (1996) (same). For example, the plaintiff in *Anderson* alleged that she was defamed by her supervisor's statements to a prospective employer indicating that she did not get along with coworkers or follow up on assignments. *Id.* at 403, 411, 667 N.E.2d at 1297, 1301. The Illinois Supreme Court found that these statements were subject to an innocent construction "signifying nothing more than that the plaintiff did not fit in with [her former employer's] organization and [did not] perform well in that particular position." *Id.* at 415, 667 N.E.2d at 1303.

Similarly, in this case, McBee's statement about Copot is reasonably capable of an innocent construction suggesting that he performed poorly only in the specific job at Stewart Title. Thus construed, the statement would not suggest that Copot would perform poorly at future jobs for different employers or that he had an inability to adequately perform in the legal profession. For this reason, the Court concludes that that Copot has not stated a claim for defamation *per se*.

The cases Copot cites are factually distinguishable. This is not a case where the allegedly defamatory statements involved generalizations about Copot's ability to perform his profession that could not reasonably be construed as relating to a narrow

circumstance or experience.  *Cf. Clarage v. Kuzma*, 342 Ill. App. 3d 573, 795 N.E.2d

348 (2003) (plaintiff stated a defamation claim where the defendant accused him of

lying to government officials with whom it was his job to communicate and thus

indicated that he was professionally unethical and untrustworthy); *Muzikowski v.*

*Paramount Pictures Corp.*, 322 F.3d 918, 926 (7th Cir. 2003) (plaintiff adequately

alleged that a film studio imputed to him to the commission of a crime of moral turpitude

where a film character allegedly based on his life committed numerous crimes).  And

McBee's allegedly defamatory statement lacked details suggesting that he intended to

indicate that Copot was a liar and unfit to practice law, as Copot contends.  *Cf. Parker v.*

*House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1025, 756 N.E.2d 286, 295 (2001) (reversing

trial court's grant of summary judgment where multiple statements in a letter made clear

that the speaker accused the plaintiff of unlawfully rigging two construction projects).

For these reasons, the Court dismisses Copot's defamation claim and need not

address McBee's other arguments supporting dismissal.

## F.     Respondeat superior claim (count 11)

Copot does not contest the dismissal of his respondeat superior claim, so the

Court dismisses that claim.

## Conclusion

For the foregoing reasons, the Court grants defendants' motion to dismiss in part

and denies it in part [dkt. no. 16].  The Court dismisses the following claims in plaintiff's

complaint:  Counts 1 (but only to the extent it concerns denial of sick leave), 2, 3 (except

to the extent it concerns retaliation for plaintiff's filing of an EEOC complaint), 4, 5, 6, 7,

8 (except to the extent it concerns conspiracy to retaliate against plaintiff for

complaining about defendant's allegedly improper but not gender-based administration of its sick leave policy), 10, and 11. The Court otherwise denies defendants' motion, thereby leaving intact parts of Counts 1, 3, and 8 and all of Count 9. Defendant Stewart Title is directed to answer all remaining claims by no later than May 11, 2020. Both parties' Rule 26(a)(1) disclosures are to be made by May 11, 2020. The parties are directed to confer regarding the possibility of settlement and the setting of a discovery and pretrial schedule. They are directed to file, by May 18, 2020, a joint status report including the following information: (1) the details of any discussions regarding settlement; (2) a proposed discovery and pretrial schedule (or separate proposals, if the parties are unable to agree); and (3) any other matters either party wishes to bring to the Court's attention. These deadlines are not affected by Second Amended General Order 20-0012, and they will not be affected by any other similar general order entered hereafter. The case is set for a status hearing on May 26, 2020 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 13, 2020