**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EDDY COPOT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19 C 6987** |
| | ) | |
| **STEWART TITLE GUARANTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Eddy Copot has sued his former employer Stewart Title Guaranty Company

("Stewart" or "the company") for violations of Title VII of the Civil Rights Act of 1964 and

various state laws.  In an earlier opinion, the Court dismissed three of the claims in

Copot's first amended complaint.  The remaining claims allege (1) sex discrimination in

violation of Title VII and the Illinois Human Rights Act (IHRA); (2) retaliation in violation

of Title VII and the IHRA; (3) civil conspiracy; (4) false imprisonment; (5) a violation of

the Illinois Personnel Record Review Act (IPRRA); and (6) retaliation in violation of the

Illinois Employee Sick Leave Act (ESLA).  Stewart has moved for summary judgment on

all of Copot's remaining claims.  For the reasons stated below, the Court grants

Stewart's motion.

### Background

Stewart is "a national real estate services company offering loan origination and

servicing support, title insurance, and underwriting services for its customers."  Def.'s

Statement of Facts (SOF) at 1.  Copot worked as an attorney in Stewart's claims division.  When Copot first started working at Stewart in April 2017, his supervisor was a woman named Charity Makela.  Makela left the company in May 2018, leaving an opening for a new Assistant Chief Claims Counsel.  Stewart did not openly advertise the role, nor did it advise employees to apply for the position.  Eventually, Kelly Rickenbach was promoted to replace Makela.  Later that year, Rickenbach selected Eleanor Sharpe to fill the newly created position of Managing Counsel.

On October 16, 2018, Copot filed a written complaint with Jennifer Johnston in Stewart's human resources department.  In the two-part complaint, Copot alleged that he was being discriminated against on the basis of his sex and that Rickenbach violated the ESLA when she required him to submit a written doctor's note to substantiate his sick leave.  Johnston investigated Copot's complaint that day, asking Rickenbach questions about the contents of the complaint.  The evidence indicates, however, that Johnston only told Rickenbach that Copot had complained about her request that he provide a doctor's note, not that Copot had alleged sex discrimination.

On or around that same day, Rickenbach discovered evidence that she believed showed that Copot had forged e-mails to make it appear as though she had approved several of his denials of claims on title insurance policies.  Stewart company policy required that claim denials receive two approvals—the first from the claims employee assigned to the claim file and the second from the claims employee's supervisor.  Rickenbach discovered that several of the claim files assigned to Copot contained e-mails, purporting to be from Rickenbach, approving these claim denials.  Rickenbach had no recollection of sending these e-mails or approving these denials.  Additionally,

2

she had no record of these e-mails in the "sent items" folder of her e-mail account.

The metadata of these e-mails reflected that they had been manipulated to suggest that they had come from Rickenbach. In addition, the original subject lines of these e-mails had been manually deleted and replaced with text related to Copot's claim files. Moreover, the metadata's routing information indicated that the e-mails were sent through an external server, suggesting that they were sent from an external e-mail address rather than from a company e-mail address.

Rickenbach concluded that Copot had forged the e-mails to make it appear as though she had approved the claim denials, and she notified her supervisor, Chief Claims Counsel Scott McBee, about what she had found and concluded. McBee also reviewed the e-mails and agreed that the e-mails were forged. Consequently, he decided to terminate Copot's employment.

On October 30, 2018, McBee, a human resources representative, and two security guards entered into Copot's office to advise him of his termination. As they entered the room, Copot was on his way to the restroom. McBee gestured to Copot to stop and closed the door of the office. McBee told him he was fired but did not tell him about the suspected forgery. Overall, the conversation in Copot's office lasted about 5–15 minutes, after which he left the premises.

## Discussion

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In evaluating the summary judgment motion, courts must "construe all inferences in favor of the party against whom the motion under consideration is made."  *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (citation omitted).

## A.    Motions to strike

Before addressing Stewart's summary judgment motion, the Court must discuss the parties' motions to strike.  Each party contends that the other's statement of facts does not conform to the requirements of Local Rule 56.1 and thus asks the Court to strike some or all of the contentions.

### 1.    Copot's motion to strike

Copot contends that Stewart's statement of facts exceeds the maximum number of paragraphs allowed without court permission under the Local Rules.  *See* LR 56.1(d)(5) ("A movant's LR 56.1(a)(2) statement of material facts must not exceed 80 numbered paragraphs.").  He argues that, although there are technically fewer than 80 paragraphs, each paragraph contains multiple facts, such that there are effectively more than 80 paragraphs.

The Court disagrees.  Although Copot is correct that Stewart's statement of facts contains paragraphs with multiple sentences and multiple facts, nothing in the Local Rules prohibits this.  All they say is that the statement of facts "must consist of concise numbered paragraphs."  *Id.* at (d)(1).  Stewart's statement of facts meets this requirement.  Its paragraphs are concise and logically grouped, and there is no basis to find that Stewart has strategically drafted its statement of facts to circumvent the limitations of the Local Rules.  Stewart's statement of facts is thus like that in *Raquet v.*

4

*Allstate Corp.*, 501 F. Supp. 3d 630, 635–36 (N.D. Ill. 2020), where the court also declined to strike the party's statement of facts. What's more, this case is significantly different from the case Copot cites, *Little v. J.B. Pritzker for Governor*, 18 C 6954, 2021 WL 3666429 (N.D. Ill. Aug. 18, 2021). In *Little*, the party's statement of additional facts contained multiple subparagraphs—with as many as 28 subparagraphs following a paragraph—meaning that the statement of additional facts actually contained 251 paragraphs. *Id.* at *1. Stewart's statement of facts is not even remotely similar. It is not unnecessarily long, does not include any subparagraphs, and does not "significantly hamper[] review and adjudication of the motions." *Id.*

The Court further notes that Copot's statement of facts, like Stewart's, also contains multiple facts per paragraph. The only difference between his statement of facts and Stewart's appears to be that most of his paragraphs are written to be only one sentence long. For example, he states in paragraph 3:

> After Ms. Makela announced her departure from STGC in May, 2018 (Plaintiff's Dep. at 198:16), no documents exist that Defendant had given notices to any STGC employee to apply for the Associate Chief Claims Counsel (Appendix Exhibit 2, Defendant's response to Plaintiff's First & Second Set of Document Requests, Defendant's response to Document Request #89) (Appendix Exhibit 3, Declaration of Eddy Copot ("Copot Decl.") at ¶ 2). [sic] and no one applied for Charity's position (Appendix Exhibit 4, Defendant's response to Plaintiff's First & Second Set of Interrogatories, Defendant's response to 2nd Set Interrogatory #8) especially Plaintiff because he had no opportunity to apply (Plaintiff's Dep. at 205: 7-15).

Pl.'s SOF at 2. This paragraph, although only one sentence long, contains several different "facts," for example, that no notice was given to apply for the position, no one applied for the position, and Copot had no opportunity to apply. Copot's position thus seems to be that the Local Rules requires that each paragraph within a statement of

facts contain only one sentence.  This cannot be so.  Such an interpretation would unnecessarily emphasize punctuation and sentence construction at the expense of substance and clarity and would encourage parties to write lengthy, convoluted sentences to manufacture compliance with the Rule.  The Court thus declines to strike Stewart's statement of facts on this basis.

Copot makes additional objections to Stewart's statement of facts.  First, he argues that McBee's declaration is inadmissible hearsay because he did not make the statements while testifying in court.  This argument, however, quite obviously ignores the distinction between summary judgment and trial.  Summary judgment occurs before trial, so courts often have to rely on evidence other than trial testimony when evaluating the motion.  The Federal Rules of Civil Procedure recognize this and thus state that parties can support their positions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations . . . or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  It goes on to state that a "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *Id.* at (c)(4).  So long as the declaration satisfies the above requirements, the court can consider it for purposes of summary judgment.  Copot does not dispute that the statements in McBee's declaration meet these requirements.  His only argument is that they cannot be considered because they are statements in a declaration.  That is a baseless objection, and the Court overrules it.

Second, Copot contends that Rickenbach's statements about her conversation

6

with Johnston are inadmissible hearsay because "Johnston never testified in this matter and what she previously said or didn't say is hearsay." Resp. to Def's SOF at 24. Not so. Rickenbach's deposition testimony relaying Johnston's statements is not hearsay because it is not offered to prove the truth of Johnston's statements but instead is offered to show her knowledge (actually, her lack of knowledge) of Copot's complaint. This is a non-hearsay use of the statements. *United States v. Law*, 990 F.3d 1058, 1062 (7th Cir. 2021) ("When an out-of-court statement is offered for its effect on the listener, and not for its truth, it is not hearsay.").

Copot also makes objections to the deposition testimony of Genady Vishnevetsky, Stewart's Chief Information Security Officer. During his deposition, Vishnevetsky discussed Stewart's technology and information security systems and his investigation into the allegedly forged e-mails. Copot contends that (1) Stewart "failed to establish the relevance and reliability" of the expert testimony; (2) Vishnevetsky is not reliable because he "failed to answer basic data science questions at his deposition"; and (3) his testimony "creates a significant risk of confusing the issues and misleading the jury." Resp. to Def.'s SOF at 28–29.

The Court overrules each of these objections. First, Vishnevetsy's testimony is relevant because it discusses the evidence suggesting that the e-mails were forged, which is a significant point relating to Copot's termination. Second, Vishnevetsy's declaration sufficiently establishes his reliability to speak on the company's technology and information security systems. He holds a bachelor's degree in computer science and several relevant certifications; he has over 31 years of relevant professional experience; he is the company's Chief Information Security Officer, responsible for the

company's information security processes and procedures; and he routinely examines e-mail metadata as part of his job. Lastly, the Court finds that Vishnevetsy's testimony does not create a significant risk of confusing the issues or misleading the jury. His testimony merely describes the evidence suggesting that Copot forged the e-mails. Copot is free to present his evidence supporting his position that Vishnevetsy's investigation was less than exemplary or that someone else could have manipulated the e-mails. But these potential weaknesses in Stewart's evidence are not reasons to exclude them completely.

### 2. Stewart's motion to strike

The Court declines to rule on Stewart's motion to strike because it has no impact on the Court's analysis of the summary judgment motion.

### B. Sex discrimination claims

In his complaint, Copot alleges several discriminatory actions: (1) his termination; (2) his non-promotion; (3) his inability to work from home; (4) the requirement to fill out a travel form when he was going to be away from the office for more than two hours during the workday; and (5) the requirement to obtain secondary approvals when denying claims for requests for reconsideration of previous claim determinations. Copot did not, however, address the latter three points in his response to Stewart's summary judgment motion. As such, these points are forfeited. *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

There are multiple ways that a plaintiff can prevail on an employment

discrimination claim. Prior to 2016, courts in this circuit frequently stated that employment discrimination claims could be proven through one of two methods: the direct method or the indirect method. *See, e.g.*, *Hutt v. AbbVie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014). The direct method relies on a showing of direct or circumstantial evidence of discrimination. *Id.* The indirect method utilizes the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under the *McDonnell Douglas* test, the plaintiff must first establish a prima facie case of discrimination. *Id.* at 802. If the plaintiff makes such a showing, the burden shifts to the employer to provide a "legitimate, nondiscriminatory reason" for its actions. *Id.* Once the employer does so, the burden shifts back to the plaintiff to present evidence that the stated reason is a pretext for discrimination. *Id.* at 804.

The Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 766 (7th Cir. 2016), elided the distinction between the direct and indirect methods and stated that all evidence, direct or indirect, "belongs in a single pile and must be evaluated as a whole." For the purposes of summary judgment, the only question that courts must ask is whether "the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination." *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Still, *Ortiz* did not get rid of the *McDonnell Douglas* test. *Ortiz*, 834 F.3d at 766. As such, the Court evaluates Copot's discrimination claims under both standards.

### 1.      The termination claim

### a.      *McDonnell Douglas* test

To make out a prima facie case of "reverse" sex discrimination, a plaintiff must

show:  (1) "background circumstances exist to show an inference that the employer has

reason or inclination to discriminate invidiously against [males] or evidence that there is

something 'fishy' about the facts at hand"; (2) "he was meeting his employer's legitimate

performance expectations"; (3) "he suffered an adverse employment action"; and (4) "he

was treated less favorably than similarly situated individuals who are not members of

his protected class."  *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (applying

this standard in a case alleging reverse race discrimination).

### i.      Background circumstances

The Court finds that there is no genuine issue of material fact on the first

element.  Copot's only evidence suggesting that Stewart had an inclination to

discriminate against males is that (1) in 2019, there were two promotions, both of which

went to women, and (2) his original supervisor (from 2001 to 2019) was a woman.  This

evidence, is insufficient to create a genuine factual dispute, especially considering

Stewart's uncontested evidence that the women hired were more qualified than Copot,

the ultimate decisionmaker in the office was male, and there was at least one other man

in an Associate Chief Claims Counsel position.  Copot argues that this case is similar to

*Mills v. Health Care Services Corp.*, 171 F.3d 450, 457 (7th Cir. 1999), where the

Seventh Circuit found that the first prima facie case element had been met.  But, in

*Mills*, nearly all promotions at the office went to women during a seven-year period, and

females dominated the supervisory positions in the relevant office.  *Id.*  Instead, this

case is like *Gore v. Indiana University*, 416 F.3d 590, 592 (7th Cir. 2005), where the Seventh Circuit held that this element had not been shown because the plaintiff was not more qualified than the candidates the university hired; a man appointed the hiring committee, which had three men and two women on it; and the university hired a man before hiring two women.

### ii. Legitimate performance expectations

Stewart contends that Copot was not meeting its legitimate performance expectations because he forged e-mails. Copot argues that this reason for termination is a pretext for sex-based discrimination. When an employment discrimination plaintiff argues that the employer's stated reason for termination is a pretext for discrimination, "the analysis of the legitimate expectations inquiry merges with the pretext analysis." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1002 (7th Cir. 2013). In such cases, the question that the court must address is "whether the employer's stated nondiscriminatory ground for the action . . . is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006). Because the legitimate expectations inquiry merges with the pretext analysis, the Court discusses both together in the pretext section below.

### iii. Adverse employment action

Stewart does not dispute that termination is an adverse employment action.

### iv. Treated less favorably than similarly situated individuals

Copot identifies two alleged comparators who he says were not terminated after violating the same company policy: Michael Grujanac and Tiki Velazquez. Grujanac is

not a proper comparator, however, because he is also male. *See Jordan v. City of Gary*, 396 F.3d 825, 833 (7th Cir. 2005) (holding that the plaintiff did not make out a prima facie case because the proposed comparator was in the same protected class). And neither are proper comparators because their misconduct did not include deception, making it significantly less severe than Copot's misconduct. *See Hall v. Vill. of Flossmoor*, 520 F. App'x 468, 472 (7th Cir. 2013) (distinguishing the plaintiff from two claimed comparators because he lied repeatedly during the company's investigation of his conduct). Copot attempts to distinguish *Hall* from this case by stating that he consistently denied the allegations of misconduct, Stewart has no evidence that he committed the alleged forgery, and Stewart's witness, Genady Vishnevestsky, "NEVER testified that Plaintiff was in fact responsible for any alleged 'forgery.'" Pl.'s Resp. at 23. Although these arguments may help to show that Copot did not actually commit the alleged forgery, they do not undermine Stewart's contention that such misconduct is significantly more severe than that of the claimed comparators.

Copot argues that his misconduct was effectively the same as Grujanac's and Velazquez's because he violated Stewart's "two-step approval process before denying an insurance claim," just as they did. *Id.* at 22. He cites *Peirick v. Indiana University-Purdue University Indianapolis Athletics Department*, 510 F.3d 681, 689 (7th Cir. 2007), for the proposition that "[c]omparable seriousness may be shown by pointing to a violation of the same company rule." Pl.'s Resp. at 23. Grujanac and Velazquez may have violated the same company rule that Copot is alleged to have violated, but the allegations against Copot go one very large step further. Specifically, Copot is not simply alleged to have denied insurance claims without supervisor approval, thereby

12

violating company policy; he is also alleged to have forged e-mails from his supervisor authorizing those denials, essentially attempting to cover up the violations of company policy. Given the dishonesty and deception involved in these allegations, it cannot reasonably be said that his alleged misconduct was simply a violation of the company's "two-step approval process."

Copot further contends that the claimed comparators' misconduct "was also dishonest because it misrepresented the company's position to insured clients of their claims being denied." *Id.* at 22. This is a stretch. Grujanac and Velazquez did not lie to their clients by informing them that their claims were denied; the clients' claims were, in fact, denied. Their actions violated company policy, not because they involved deception or dishonesty, but because they denied the claims without getting supervisory approval. They did not lie about violating the policy, and more importantly, they did not try to cover up their violations by creating phony approval e-mails.

Lastly, Copot argues that his misconduct "could not have been that serious if [Stewart] NEVER took ANY initiative to reverse any of the denials it claims Plaintiff forged." *Id.* at 23. This argument fails for two reasons. First, it is inaccurate. Stewart did reverse at least one denial that it claims Copot forged. Second, it is irrelevant. Whether Stewart believed that Copot's determinations warranted reversal does not change the fact that his alleged forgery undermined the company's confidence in him to follow proper procedure and represent its best interests. In other words, whether Copot correctly determined that the claims should be denied is an entirely separate question from whether he engaged in misconduct in connection with the denials of the claims.

Finally, even if Copot is correct that his misconduct is effectively the same,

summary judgment would still be warranted because Copot admits that his supervisors were unaware of Grujanmac's and Velazquez's misconduct until after the employees had left the company. It therefore cannot be said that Stewart treated them more favorably because, by the time it found out about their misconduct, it no longer had the power to terminate them.

In short, no reasonable jury could find that Stewart treated Copot less favorably than similarly situated persons outside his class.

**v.    Pretext**

Even if Copot is able to make out a prima facie case, Stewart provides a reason for firing him that is not a pretext for discrimination: it honestly believed that he forged e-mails to make it seem like Rickenbach had signed off on claim denials that she did not. Copot argues that this explanation is pretextual for several reasons, none of which would permit a reasonable jury to find in his favor.

First, he contends that he was not informed of any performance issues prior to his last day. This does not create a genuine dispute, however, because Stewart contends that Copot failed to meet its legitimate expectations exclusively because of the alleged forgery. Thus it does not matter whether he had any previous performance issues. As both parties state, the question is whether Copot was meeting Stewart's expectations *at the time of his termination*. Def.'s Mem. at 3; Pl.'s Resp. at 26.

Copot's second and third reasons for why Stewart's justification is pretextual essentially are contentions that he did not actually commit the forgery. First, he states that Stewart's proffered reason is contrary to his past practice of following company policy. He further argues that his passwords were available for anyone to commit

14

forgery on his files. This evidence is insufficient to create a genuine dispute that would warrant denial of summary judgment. The issue here is whether Stewart fired Copot because the decisionmaker honestly believed that he committed the forgery. *See Khungar v. Access Community Health Network*, 985 F.3d 565, 576–77 (7th Cir. 2021). Stewart presents more than enough evidence to establish this and that no reasonable jury could find otherwise. In contrast, Copot's evidence—namely, a short record of adhering to company policy and the mere possibility that someone else could have committed the forgery using his information—would not allow a reasonable jury to conclude that Stewart's justification was pretextual.

Lastly, Copot argues that Stewart's justification is a pretext because he was not told why he was being terminated and was not given the opportunity to deny such accusations. But there is nothing in the case law that indicates that an employer must hold a quasi-hearing or question the employee before terminating them. The fact that Stewart did not do so here does not suggest any sort of pretext.

### b. The *Ortiz* standard

Under the *Ortiz* standard, the court puts all the evidence in favor of the plaintiff in a pile and evaluates it as a whole. The evidence cited by Copot is sparse and insufficient to create a genuine dispute warranting denial of summary judgment. The only evidence that Copot offers to support his claim of discrimination are (1) two women were promoted in 2019; (2) his first supervisor was also a woman; (3) two employees who committed significantly less severe misconduct—misconduct that was discovered after the employees left the company—were not terminated; (4) Copot had followed Stewart's two-approval policy in the past; (5) anyone could have used his credentials to

manipulate and send the e-mails; and (6) he was terminated without getting an explanation or chance to dispute the allegations. Considering all of this together, no reasonable jury could find that Stewart's termination of Copot was based on his gender.

### 2. The failure to promote claim

#### a. Prima facie case

In a "reverse" discrimination case, the plaintiff must show four elements to state a prima facie case on a claim of failure to promote. The first element is the same as the first element for a termination claim: "'background circumstances' suggesting that the employer discriminates against the majority." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). Because the analysis is the same as above, the Court does not repeat it here. The other three elements are as follows: (1) he was qualified for the position sought; (2) he was rejected for that position; and (3) someone outside of the protected class who was not better qualified for the position was promoted instead. *Id.*

#### i. Qualified for position sought

Stewart contends that Copot was not qualified for the promotions because he was relatively inexperienced in title insurance claims; he had only been at Stewart for a little over a year; he had no managerial experience at Stewart; and he had received only one average performance review. Copot does not address these arguments and thus concedes them. *See Bonte v. U.S. Bank*, 624 F.3d 461, 466 (7th Cir. 2010). Because there is no genuine dispute regarding whether Copot was qualified for the position, Stewart is entitled to summary judgment on his failure to promote claims. The Court addresses the other elements, however, to ensure a complete record for appeal.

### ii. Rejected for the position

Stewart argues that Copot cannot make out a prima facie case because he did not apply for the positions. Copot contends that, because Stewart did not advertise these job openings, he is not required to have applied for the positions. Copot is correct, but Stewart ultimately carries the day.

In *Box v. A & P Tea Co.*, 772 F.2d 1372, 1377 (7th Cir. 1985), the Seventh Circuit stated:

> When an employer uses a promotion system in which employees do not apply for promotions but rather are sought out by managers, the application requirement of the prima facie case is loosened somewhat. In this situation, the plaintiff can establish the application element of a prima facie case by showing that, had she known of an assistant manager opening, she would have applied.

Thus, in cases like this one where the employer did not seek applications for the open positions, the plaintiff must show that had he known of the job opening, he would have applied. *Id.* But it is not enough for the plaintiff to express a general interest in obtaining a different job. *Id.* To satisfy this element, the plaintiff must identify which position he would have applied to and provide evidence that he would have applied had he known of the opening. *Id.*

Copot does not do this. His only evidence that he would have applied is his deposition testimony that states that "he expected to be considered for the promotions given to Ms. Rickenbach and Ms. Sharpe." Pl.'s SOF at 9. This is insufficient to create a genuine dispute regarding whether he would have applied to the positions.

### iii. Someone who was not better qualified was promoted

There is no genuine dispute that Rickenbach and Sharpe were more qualified than Copot. Copot argues that Rickenbach was not more qualified for two reasons.

First, he points to McBee's statement that Rickenbach was promoted because nobody outside the organization wanted a six-month position. Second, he contends that Rickenbach "frequently" asked him for advice. Pl.'s Resp. at 11. Neither of these facts are sufficient to create a genuine dispute. First, the fact that Rickenbach was promoted because external hires were not interested in the position does not undermine her qualifications. Second, a plaintiff's subjective belief that he is as qualified or more qualified than another is insufficient to create a genuine dispute. *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008). Copot gives the Court no reason to believe that he has a sufficient basis to evaluate Rickenbach's qualifications. Even assuming that Rickenbach "frequently" asked Copot for advice, this does not shed any light on her capabilities outside those interactions or her qualifications more generally. More generally, there's nothing in the least bit unusual in a supervisor asking a supervisee for advice, and doing so does not reflect the supervisor's lack of qualifications.

There is also no genuine dispute that Sharpe was more qualified than Copot. Copot argues that "Sharpe had no management experience before her promotion, she did not perform well in handling claims, and there were inconsistent explanations of her new duties as Managing Counsel." Pl.'s Resp. at 11. He also points out that "her 2018 performance review did not state a management position was her next progression in the company and Defendant maintained her position as Claims Counsel even though the senior Claims Counsel position was available at [Stewart]." *Id.* at 12.

The problem with Copot's arguments, however, is that they primarily rely on statements from his own deposition, which merely relay his subjective beliefs. *See Hall*, 536 F.3d at 620. Additionally, he presents no evidence suggesting that he has a

sufficient basis to compare their qualifications.  In fact, when asked what Sharpe's qualifications were for the position, he answers:  "That's a really good question to which I really don't know. . . . I'm completely unaware of her experience in [the management] realm."  Copot Dep. at 206:13–20.  In contrast, Stewart provides undisputed evidence of Sharpe's qualifications, including her seniority at Stewart, her "excellent" performance ratings, and her $75,000 claims approval authority.  With respect to Copot's contention that there were inconsistent explanations of Sharpe's new duties as Managing Counsel, the Court does not see how that has any bearing on whether she was qualified for the position.  Additionally, the fact that Sharpe was not promoted to Senior Claims Counsel before being promoted to Managing Counsel does not suggest that she was not more qualified than Copot.

### iv.    Pretext

Even if Copot can make out a prima facie case, there is no genuine dispute that Stewart's reason for not promoting him was not a pretext for discrimination.  Copot offers no evidence suggesting that Rickenbach's and Sharpe's superior qualifications were not Stewart's honest reason for promoting them.

### b.    *Ortiz* analysis

As with his termination claim, the evidence Copot cites is sparse and insufficient to create a genuine factual dispute under the *Ortiz* standard.  The only evidence that supports Copot's allegation of discrimination is that, in 2019, two women who were more qualified than Copot were promoted.  This certainly is not enough for a reasonable jury to conclude that Stewart discriminated against him on the basis of his sex.  The Court thus grants summary judgment in Stewart's favor on Copot's failure to promote

19

claims.

## C.    Retaliation

Copot contends that he was fired in retaliation for filing a complaint with the Stewart human resources department alleging discrimination.  The Court grants summary judgment on these claims for two reasons.

First, it is not genuinely disputed that Rickenbach and McBee did not know about Copot's complaint when they decided to terminate him.  Copot argues that, at the very least, Rickenbach knew about the complaint because Jennifer Johnston in the human resources department questioned Rickenbach about the complaint on the same day that Rickenbach says she discovered Copot's alleged misconduct.  But Rickenbach testified that Johnston talked to her about the company's sick leave policy, not Copot's sex discrimination claim.  There is no evidence that would permit a reasonable jury to find Johnston discussed Copot's sex discrimination claim with Rickenbach and no other evidence that would suggest that Rickenbach knew of Copot's sex discrimination claim. In fact, Copot only cites two pieces of evidence in his statement of facts in support of his contention on this point:  (1) Stewart's answer to one of his interrogatories and (2) Rickenbach's deposition.  The former states only that "Jennifer Johnson investigated Plaintiff's allegations by questioning Kelly Rickenbach regarding the same."  Def.'s Resp. to Pl.'s 1st Set Interrog. at 2.  The latter states that Johnston *did not* tell Rickenbach the details of Copot's complaint.  Rickenbach Dep. 42:11–16.

Because there is no evidence that Rickenbach knew of Copot's complaint, the so-called cat's paw theory, which Copot references, doesn't apply.  The cat's paw theory allows a court to impute retaliatory or discriminatory intent of a subordinate to the

ultimate decisionmaker (and thus to an employer) in situations where the subordinate exerts significant influence over the employment decision. But because Rickenbach did not know about Copot's complaint, she could not have had retaliatory intent that can be imputed to Stewart. Similarly, the cases that Copot cites do not apply because they involved situations where one decisionmaker had retaliatory animus and provided information to an ignorant decisionmaker. *See Donley v. Stryker Sales Corp.*, 906 F.3d 635, 639 (7th Cir. 2018); *Schandelmeier-Bartels v. Chicago Park District*, 634 F.3d 372, 38–85 (7th Cir. 2011).

Second, summary judgment is warranted because there is no genuine dispute that Copot was fired because Stewart believed that he had engaged in the alleged forgery. Thus, even if there was a causal relationship between the complaint and the termination, that link was broken by Stewart's discovery of Copot's alleged forgery.

## D. Civil conspiracy

Copot alleges that Stewart participated in a conspiracy to terminate him for filing his complaint with the human resources department. The Court grants summary judgment on this claim for three reasons.

First, Stewart argues that this Court should grant summary judgment on Copot's civil conspiracy claim because it is duplicative of his other claims. Courts in this circuit grant summary judgment on conspiracy claims when they do not "include[] additional defendants or new facts not already pled in the underlying tort." *Powell v. City of Berwyn*, 68 F. Supp. 3d 929, 950 (N.D. Ill. 2014) (citation omitted). Copot argues that his claim is not duplicative because he added new facts to the conspiracy claim that were not in the claim for the underlying tort. Pl.'s Resp. at 27–28 (citing Pl.'s SOF ¶ 12).

But these so-called "new facts" do not save the claim from being duplicative. The same acts, namely retaliation for filing the human resources complaint, are the basis for both this claim and the retaliation claims. Thus the conspiracy claim seeks to hold Stewart doubly liable for the same underlying acts.

Second, the admissible evidence in the record is insufficient to create a genuine dispute regarding whether there was an agreement, a key element of a conspiracy claim. Copot relies on two pieces of evidence: (1) a claimed statement to Copot by Tonya Moseley, Copot's legal assistant in which she states that McBee, Rickenbach, and Sharpe had an agreement to scrutinize him for his complaint about Stewart's sick leave policy and (2) a document on his co-worker Mary Mitchell's desk allegedly containing times of Copot's comings and goings. Copot contends that McBee, Rickenbach, and Sharpe, as part of the conspiracy, ordered Mitchell to keep track of Copot's movements to build a case against him as cover for their retaliatory decision to terminate him.

But Copot does not contest, and thus concedes, that Moseley's statement is inadmissible as hearsay. As such, it cannot be used to create a genuine dispute on summary judgment. S*ee Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003). That just leaves the Mitchell document, which is essentially just a list of times on a piece of paper. This is not enough to create a genuine dispute. The document is not in the record, there is no way to verify whether the numbers on the page are actually records of Copot's comings and goings, and there is nothing tying this document to an agreement between McBee, Rickenbach, and Sharpe without the inadmissible statement by Moseley.

Without evidence of an agreement to conspire against him, Copot's civil conspiracy claim fails. *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 133, 720 N.E.2d 242, 258 (1999).

Lastly, the Court grants summary judgment on this claim because it granted summary judgment on the underlying retaliation claims, meaning that there is no underlying tort on which the civil conspiracy claim can be based. *Indeck N. Am. Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432, 735 N.E.2d 649, 662 (2000) ("Where, as here, a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the claim for a conspiracy also fails.").

**E.    False imprisonment**

Copot contends that Stewart falsely imprisoned him when McBee, a person from human resources, and two security guards confined him in his office and prevented him from using the restroom. The Court finds that summary judgment in Stewart's favor is warranted for two reasons.

First, Copot's claim is preempted by the Illinois Workers' Compensation Act, which provides the exclusive remedy for accidental injuries that occur in the workplace. *See Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chi.*, 104 F.3d 1004, 1016 (7th Cir. 1997). The definition of "accidental" for the purposes of the statute is broad; so long as the plaintiff's injuries were not intentionally inflicted by the employer's "alter ego" or "were commanded or expressly authorized by the employer," intentional torts committed by other employees are considered "accidental" from the standpoint of the employer. *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463–64, 564 N.E.2d 1222, 1226 (1990). Copot does not address this argument. As such, it is conceded.

*Bonte*, 624 F.3d at 466.

Even if the claim was not preempted, the Court would still grant summary judgment in favor of Stewart because there is no genuine dispute that Copot was not restrained against his will. The evidence shows that Copot was in his own office for 15 minutes. He was not forcibly taken to the office, handcuffed, arrested, or physically restrained. The door was never locked, and the conversation occurred during work hours. In this regard, the scenario is almost identical to that in *Hanna v. Marshall Field & Co.*, 279 Ill. App. 3d 784, 793–94, 665 N.E.2d 343, 350 (1996). The case Copot cites, on the other hand, is inapplicable because, in that case, the defendants were police officers who improperly arrested the plaintiff without probable cause. *See Martel Enters. v. City of Chicago*, 223 Ill. App. 3d 1028, 1035, 584 N.E.2d 157, 161 (1991).

## F.    IPRRA

Copot alleges that Stewart violated the IPRRA by failing to provide him with his personnel records as required by the statute. For the following reasons, the Court grants summary judgment in favor of Stewart on this claim.

First, the documents that Copot contends were missing do not constitute personnel records under the IPRRA. Under the statute, only documents used in Copot's termination are required to be disclosed, and Stewart contends that the only documents it used in Copot's termination were the forged e-mails. Copot does not address this argument. As a result, it is conceded. *Bonte*, 624 F.3d at 466.

Second, Stewart was not required to disclose the documents, even if they did constitute personnel records under the statute, because Copot submitted his IPRRA request days after he filed his EEOC charge. Under the statute, employers are not

required to hand over "[r]ecords relevant to any other pending claim between the employer and employee which may be discovered in a judicial proceeding."  820 ILCS 40/10(f); *see also Harden v. Comcast Corp.*, 819 F. App'x 445, 447 (7th Cir. 2004) (finding that the employer "permissibly excluded the additional documents that [the plaintiff] sought after filing her EEOC charge").  Because the allegedly missing documents could have been—and, in fact, were—discovered in a judicial proceeding, Stewart had no obligation to disclose them in response to Copot's IPRRA request.

## G.    ESLA retaliation

Copot contends that he was fired as retaliation for filing a complaint with the human resources department alleging violations of the ESLA.  The Court grants summary judgment in favor of Stewart on this claim as well.

First, as stated above, it is not genuinely disputed that Stewart terminated Copot due to the forgery.

Second, Copot concedes that Stewart's policy (requiring a doctor's note to substantiate sick leave) does not violate the ESLA.  Because the ESLA's anti-retaliation provision "prohibits the termination of an employee for complaining about policies *only if* the complained of policy violates the Act," the provision does not apply here.  *DiPietro v. GATX Corp.*, 2020 IL App (1st) 192196, ¶ 47, 167 N.E.3d 247, 259 (emphasis added).

Lastly, Copot did not engage in protected activity under the ESLA because the statute only covers the use of sick leave to care for relatives, not for personal use.  *Id.* ¶43, 167 N.E.3d at 258 ("Accordingly, unless plaintiff was denied leave—directly or indirectly through the use of the COO Program—specifically because she was using it to care for her mother, rather than herself . . . plaintiff's claimed denial of leave did not

violate the Act.").  Because Copot admits that he used his sick leave benefits for his own personal use, he did not engage in protected activity under the statute.

### Conclusion

For the foregoing reasons, the Court grants Stewart's motion for summary judgment [dkt. no. 116] and directs the Clerk to enter judgment in favor of the defendant and against the plaintiff.

MATTHEW F. KENNELLY
United States District Judge

Date:  March 3, 2022